IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ROBERTO RAMOS MUÑOZ,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO.: 19-1509 (MEL)

**OPINION AND ORDER**

**I.    Procedural and Factual Background**

Pending before the court is Mr. Roberto Ramos Muñoz's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability benefits under the Social Security Act. ECF No. 15. On June 11, 2015, Plaintiff filed an application for Social Security benefits alleging that on October 27, 2012 ("the onset date"), he became unable to work due to disability. Tr. 18.[1] Prior to the onset date, Plaintiff worked as a warehouse worker and tractor trailer truck driver. Tr. 28. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. Tr. 20. Plaintiff's disability claim was denied on September 4, 2015, and upon reconsideration. Tr. 18.

Thereafter, Plaintiff requested a hearing which was held on December 14, 2017 before Administrative Law Judge Livia Morales ("the ALJ"). Tr. 18, 35-64. On February 8, 2018, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 29. Thereafter, Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial

---

[1] "Tr." refers to the transcript of the record of proceedings.

review. Tr. 1-5. Plaintiff filed a complaint on May 24, 2019. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 15, 18.

## II.     Legal Standard

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether her factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying

the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B. Disability under the Social Security Act

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether

plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### C. The ALJ's Decision

In the case at hand, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. Tr. 20. Then, at step one of the sequential

evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. Tr. 21. At step two, the ALJ determined that Plaintiff had the following severe impairments: lumbosacral disorder with right side radiculopathy and mild weakness, status-post laminectomy and fusion of L4-L5, and major depressive disorder. Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 21. Next, the ALJ determined that during the relevant period

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except that the claimant is able to push and pull as much as he can lift and carry, but frequently with the right lower extremity. He can sit for six hours and stand and walk for two hours in an 8-hour day with the ability to change positions every 30 minutes for about 2-3 minutes with the ability to stay on task and no loss of production. He uses a cane to walk for support and balance, but would be able to put the cane down when arriving at his workstation and would not need it for standing. He can climb stairs and ramps occasionally, but never ladders, ropes, or scaffolds. He can frequently balance, occasionally stoop, kneel, crouch, and crawl. He can never be exposed to unprotected heights, frequently be exposed to moving mechanical parts and operating a motor vehicle. He is able to understand, remember and carry out simple and routine tasks. His time off task can be accommodated with normal breaks.[2]

Tr. 23. At step four, the ALJ determined that through the date last insured, Plaintiff could not perform his past relevant work as a warehouse worker and tractor trailer truck driver. Tr. 28. At step five, the ALJ presented Plaintiff's RFC limitations, as well as his age, education, and work experience to a vocational expert. Tr. 28-29. The vocational expert testified that a hypothetical individual with a similar RFC would be able to perform the following representative occupations: order clerk, ticket checker, and addresser. Tr. 29, 57, 58. Because there was work in

---

[2] The term "constantly" is defined as occurring two-thirds or more of the time, "frequently" is defined as anywhere between one-third to two-thirds of the time, and "occasionally" is defined as very little up to one-third of the time. See Social Security Ruling ("SSR") 83–10, 1983 WL 31251, at *6.

the national economy that Plaintiff could perform, the ALJ concluded that he was not disabled. Id.

## III. Legal Analysis

Plaintiff objects to the ALJ's final decision denying his disability benefits on three grounds. First, Plaintiff alleges that the ALJ's RFC determination is not supported by substantial evidence. ECF No. 15, at 16-22. Next, Plaintiff claims that the ALJ did not properly develop the administrative record. Id. at 9-13. Lastly, Plaintiff alleges that the ALJ's step five determination is not supported by substantial evidence. Id. at 13-16.

### A. The ALJ's RFC Determination

Plaintiff claims that the ALJ's RFC determination is not supported by substantial evidence. ECF No. 15, at 16-22. The ALJ is responsible for determining a claimant's RFC based on all the relevant evidence, including a claimant's medical record, the medical opinions, and a claimant's description of his limitations. 20 C.F.R. §§ 404.1545, 404.1546. A claimant's RFC is the most he can do despite limitations from his impairments. Id. The claimant, however, has the burden of providing evidence to establish how his impairments limit his RFC. 42 U.S.C. § 423(d)(5)(A); Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

#### 1. The ALJ's Mental RFC Determination

The ALJ thoroughly considered the evidence of record regarding Plaintiff's mental impairments and reasonably determined that he retained the ability to understand, remember, and carry out simple and routine tasks, and that his time off-task could be accommodated with normal breaks. Tr. 23, 26-27. In September 2014, Plaintiff began an ongoing treatment relationship with treating psychiatrist Dr. Ibzán Pérez Muñoz ("Dr. Pérez"). Tr. 558, 131-39, 456-64, 529-59, 578-94. On August 17, 2015, Dr. Pérez completed a psychiatric evaluation after

6

five treatment sessions with Plaintiff. Tr. 132. Dr. Pérez noted that Plaintiff reported that he was sad, depressed, and anxious. Tr. 133. Dr. Pérez diagnosed Plaintiff with major chronic depression and assigned him a global assessment of functioning ("GAF") score of 50.[3] Tr. 138, 941. Dr. Pérez found that Plaintiff had a coherent, relevant, and goal-oriented thought process. Tr. 134. Dr. Pérez also found that Plaintiff's recent and remote memory was conserved but that he had low immediate memory.[4] Tr. 134. It was opined by Dr. Pérez that Plaintiff had low attention and concentration and poor judgment. Tr. 134-35.

The ALJ assigned little weight to Dr. Pérez's opinion. Tr. 26-27. Plaintiff argues that Dr. Pérez's opinion should have been given controlling weight because he was a treating physician. ECF No. 15, at 21-22. "[A]n ALJ should generally give more weight to a treating physician's opinions, because such doctors 'are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [claimant's] medical impairment(s).'" Carstens v. Comm'r of Soc. Sec., Civ. No. 12-1335, 2013 WL 3245224, at *7 (D.P.R. June 26, 2013) (quoting 20 C.F.R. § 404.1527(d)(2)). The ALJ, however, can give less weight to a treating physician's opinion with a showing of good cause: "(1) that they are brief and conclusory, (2) not supported by medically acceptable clinical laboratory diagnostic techniques, or (3) are otherwise unsupported by the record." Carrasco v. Comm'r of Soc. Sec., 528 F. Supp. 2d 17, 25 (D.P.R. 2007).

---

[3] "GAF is a scale from 0 to 100 used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults. A GAF score ranging from 41 to 50 indicates 'serious symptoms' or any 'serious impairment in social occupational, or school functioning.' A GAF score between 51 and 60 indicates 'moderate symptoms' or 'moderate difficulty in social occupational, or school functioning.'" Sánchez Rosa v. Comm'r of Soc. Sec., Civ. No. 18-1506, 2019 WL 3202683, at *3 n.2 (D.P.R. July 16, 2019) (citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) (DSM–IV–TR)).

[4] Immediate memory measures a claimant's ability to instantly recall while recent memory measures a claimant's ability to recall after a short delay such as 20 minutes. See Spencer v. Astrue, Civ. No. 10-1151, 2011 WL 7501273, at *9 (S.D.W. Va. Dec. 6, 2011).

In the case at hand, the ALJ determined that Dr. Pérez's opinion was inconsistent with the other record evidence. Lozada-Miranda v. Comm'r of Soc. Sec., Civ. No. 18-1410, 2020 WL 4671838, at *6 (D.P.R. Aug. 11, 2020) ("the opinion of a treating physician need not be given controlling weight where the ALJ determines that it is inconsistent with the other substantial evidence in [the] case record.") (citing 20 C.F.R. § 404.1527(c)). Dr. Pérez's opinion is contradicted by consultant clinical psychologist Dr. Annette Barbosa Hernández's ("Dr. Barbosa") psychological report. On August 14, 2015, Dr. Barbosa examined Plaintiff and diagnosed him with major depressive disorder.[5] Tr. 932. Dr. Barbosa observed that Plaintiff had an anxious and depressed mood but noted that his speech was coherent, relevant, and logical. Tr. 929. Dr. Barbosa also noted that Plaintiff could hold a conversation, pay attention, understand questions, and follow instructions. Id. Dr. Barbosa found that Plaintiff was oriented in all spheres and possessed above average intellectual functioning. Tr. 929, 931. The ALJ noted that Dr. Barbosa did not identify any difficulties in attention and concentration. Tr. 26, 930. Dr. Pérez's opinion is also inconsistent with the opinion of consultant neurologist Dr. Olga Ríos Robles ("Dr. Ríos") who examined Plaintiff on August 19, 2015 and assessed normal mental status findings. Tr. 944-45. Dr. Ríos found that Plaintiff was alert, active, and fully oriented in all spheres. Tr. 944. Dr. Ríos also found that Plaintiff had fluent speech and intact naming, comprehension, and repetition. Id.

Furthermore, the ALJ noted in her decision that Plaintiff's daily activities were not limited to the extent that one would expect given his complaints of disabling symptoms and

---

[5] A depressive disorder is a nonexertional impairment that may result in nonexertional limitations. Watts v. Astrue, Civ. No. 7-519, 2009 WL 669224, at *13 (S.D.W. Va. Mar. 10, 2009). A nonexertional limitation is one that affects a claimant's ability to meet the requirements of a job and may include, among others, difficulty functioning due to nervousness, anxiety or depression, difficulty maintaining attention or concentrating, and difficulty understanding or remembering detailed instructions. See 20 C.F.R. § 404.1569a(c)(1).

8

limitations. Tr. 27. Plaintiff indicated in his function report that he is able to complete some household chores and drive a car. Tr. 27, 78-79, 98-99. Plaintiff reported being able to prepare his own meals and take care of his pets. Tr. 97-98. Plaintiff also reported that he can pay bills, count change, manage a savings account, and use a checkbook which is consistent with Dr. Barbosa's finding that he can competently handle funds. Tr. 79, 932. Dr. Barbosa also noted that Plaintiff reported being able to care for his own personal hygiene, walk without help, and take his medications. Tr. 928.

On August 31, 2015, state agency consultant clinical psychologist Dr. Bárbara Hernández ("Dr. Hernández") reviewed the record evidence and found that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and mild limitations in maintaining concentration, persistence, or pace. Tr. 612. Dr. Hernández also found that Plaintiff could perform simple and detailed tasks. Tr. 613. In making this finding, Dr. Hernández noted that Plaintiff still performed daily activities which required an acceptable level of functioning. Tr. 613. In December 2015, state agency consultant clinical psychologist Dr. Zulma Nieves ("Dr. Nieves") reviewed the record on reconsideration and concurred with Dr. Hernández's opinion. Tr. 630-31. The ALJ gave significant weight to the opinions of Dr. Hernández and Dr. Nieves but found that the record supported further limitations in Plaintiff's ability to perform complex tasks. Tr. 26.

Plaintiff argues that the ALJ's mental RFC determination was deficient because it did not include specific findings regarding his ability to work in different work environments, attend work regularly, and accept supervision. ECF No. 15, at 17. Plaintiff's argument is unavailing as the ALJ specifically considered Plaintiff's functioning in these areas in determining his mental RFC. Tr. 22-23. First, the ALJ considered Plaintiff's ability to cope with the demands of

different work environments by reasonably limiting his RFC to a job which involved only simple and routine tasks. Tr. 23. Moreover, the ALJ considered Plaintiff's ability to attend to his work and found that his time off-task could be accommodated with normal breaks. Tr. 23.

Plaintiff's ability to interact with others was also contemplated by the ALJ as she noted that his treatment providers continuously observed him as being cooperative and well-behaved. Tr. 22. Plaintiff has not cited to any record evidence discrediting the ALJ's finding that he was cooperative and well-behaved during his medical appointments. The ALJ also noted in her decision that Plaintiff was able to interact appropriately at the hearing. Tr. 22. Furthermore, in August 2015, Plaintiff reported to Dr. Barbosa that he receives visits from friends and can socialize with them and his family. Tr. 928. Plaintiff also reported to Dr. Barbosa that he had a good relationship with his co-workers and supervisors when he worked. Id.

The ALJ appropriately considered the medical evidence and opinions of record in determining Plaintiff's RFC regarding his mental limitations. Thus, the ALJ's mental RFC determination is supported by substantial evidence. See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987) ("We must affirm the Secretary's [determination], even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

**2. The ALJ's Physical RFC Determination**

Plaintiff alleges that the ALJ's physical RFC determination is not supported by substantial evidence. ECF No. 15, at 18-21. After considering the evidence in the record, the ALJ reasonably found that Plaintiff's impairments were not so restrictive as to preclude a range of sedentary work. Tr. 23. An RFC for sedentary work indicates that the claimant has significant functional limitations. See 20 C.F.R. Pt. 404, Subpt. P., App. 2 § 201.00(h)(4) ("Sedentary work

represents a significantly restricted range of work, and individuals with a maximum sustained work capability limited to sedentary work have very serious functional limitations.").

The ALJ noted that in January 2014, Plaintiff underwent lumbar spinal surgery where lumbar decompression and lumbar fusion were performed by treating orthopedic surgeon Dr. Héctor A. Vargas Soto ("Dr. Vargas"). Tr. 509. In March 2014, examining radiologist Dr. Edward McBurney ("Dr. McBurney") conducted an x-ray of Plaintiff's lumbar spine and found that there were no compression fractures or dislocations and that the alignment and lumbar lordosis were well maintained. Tr. 1038. Dr. McBurney also opined that the visualized sacrum and sacroiliac joints were grossly unremarkable. Tr. 1038. In September 2014, examining radiologist Dr. Jorge Vidal ("Dr. Vidal") conducted an x-ray of Plaintiff's lumbar spine which revealed normal alignment and no compression fracture deformities. Tr. 1017.

In March 2015, examining radiologist Dr. Manuel González Meléndez ("Dr. González") conducted a CT scan of the lumbar spine and found that there was mild leftward curvature, bilateral L5 spondylosis, degenerative disc disease, and degenerative endplate change. Tr. 950. Dr. González, however, found that there was no spinal canal stenosis and that the sacroiliac joints were preserved. Id. On August 19, 2015, examining radiologist Dr. Ricardo De Jesús Gomez ("Dr. De Jesús") conducted a radiologic study of Plaintiff's spine which revealed minimal narrowing of the L4-L5 and L5-S1 intervertebral disc spaces but found that the intervertebral disc spaces were otherwise well preserved. Tr. 952. Dr. De Jesús also found no definite evidence of acute fracture or subluxation. Id. The ALJ noted that Plaintiff's treatment for his spine following surgery has been conservative and the record did not reflect additional treatment modalities such as narcotic-based medicine, acupuncture, steroid injections, or nerve blocks. Tr. 24. Plaintiff has not cited to any record evidence contradicting the ALJ's findings that

he did not receive narcotic-based medicine, acupuncture, steroid injections, or nerve blocks following his lumbar spine surgery.

On August 19, 2015, Dr. Ríos examined Plaintiff and found that his upper extremity examination was mostly normal except for 4/5 strength on the right side. Tr. 945. Dr. Ríos also found that Plaintiff had 4/5 bilateral strength in the lower extremities. Id. Dr. Ríos opined that the physical examination revealed signs and symptoms consistent with lumbar radiculopathy localized to the right side and that he had a mild difficulty with gait and coordination on the right side. Id. Dr. Ríos, however, also opined that Plaintiff was not at risk for recurrent falls and that the rest of the examination was within normal limits. Id. Dr. Ríos also noted that Plaintiff did not use an assistive device for ambulation. Tr. 946.

The ALJ noted that in August 2015, Dr. Pérez documented that Plaintiff used a brace, but not a cane, as an assistive device even though a cane was provided as a possible choice on the list. Tr. 25, 463, 941. Despite the lack of evidence in the record of any physician having prescribed a cane, the ALJ included a limitation in the RFC that Plaintiff uses a cane for support and balance. The ALJ included this limitation based on Dr. Ríos's August 2015 finding that Plaintiff limped with his right leg. Tr. 25, 945-46. The ALJ also noted that examining physiatrist Dr. Edward Baucage ("Dr. Baucage") diagnosed radiculopathy in October 2015. Tr. 25, 1223.

Plaintiff argues that the ALJ erred in assigning partial weight to the opinion of Dr. Vargas. ECF No. 15, at 20-21. In March 2015, Dr. Vargas opined that Plaintiff could return to work subject to certain limitations. Tr. 25, 176, 1003. Specifically, Dr. Vargas opined that Plaintiff could not lift more than 10 pounds overhead and push/pull more than 10 pounds. Id. Additionally, Dr. Vargas found that Plaintiff could not crouch or perform activities that required sudden impulses or balancing. Id. It was also opined by Dr. Vargas that Plaintiff needed to

12

change positions from sitting to standing every 30 minutes. Id. Moreover, Dr. Vargas opined that Plaintiff cannot climb more than 10 steps in a row and cannot walk more than 100 meters without rest. Id.

In the case at hand, the ALJ reasonably assigned partial weight to the opinion of Dr. Vargas where it was consistent with the record evidence. Tr. 25; see Butler v. Comm'r of Soc. Sec., Civ. No. 16-500, 2017 WL 2834482, at *8 (N.D.N.Y. June 29, 2017) ("It is well-recognized that the ALJ need not adopt any opinion in its entirety, but rather is entitled to weigh all the evidence and adopt the limitations supported by the evidence."). The ALJ's RFC determination included several of Dr. Vargas's assessed limitations. For example, the RFC included a limitation that Plaintiff needed to change position every 30 minutes which is consistent with Dr. Vargas's opinion that Plaintiff need to change positions from sitting to standing every 30 minutes. Tr. 23, 176, 1003. The ALJ's RFC determination also limited Plaintiff to sedentary work which requires the lifting of, at most, 10 pounds which is consistent with Dr. Vargas's opinion that Plaintiff could not lift more than 10 pounds. Tr. 23, 176, 1003; see 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time.").

The ALJ, however, found that Dr. Vargas's opinion that Plaintiff could not walk more than 100 meters without rest was inconsistent with the record evidence. Tr. 25. In September 2014, consultant orthopedic surgeon Dr. Carlos Grovas Badrena ("Dr. Grovas") examined Plaintiff and found that he had a normal posture and gait. Tr. 1022. On August 14, 2015, Dr. Barbosa found that Plaintiff was able to walk without help. Tr. 928. On August 19, 2015, Dr. Ríos opined that Plaintiff had only mild difficulty with gait and coordination on the right side. Tr. 945. Dr. Ríos also opined that Plaintiff did not seem to be at risk for recurrent falls and

that the rest of his examination was "grossly within normal limits." Tr. 945. The ALJ also found that Dr. Vargas's opinion was inconsistent with Plaintiff's reported daily activities which included driving, shopping in stores, and completing some household chores. Tr. 39-40, 51, 78-79. Thus, the ALJ appropriately reconciled these conflicting limitations in evaluating Plaintiff's functioning. Tr. 24-26.

Furthermore, while the ALJ did not find that Dr. Vargas's opinion that Plaintiff could not climb more than 10 steps at a time and walk more than 100 meters without resting was supported by the record, the RFC determination still included limitations in these areas. The ALJ restricted Plaintiff to only occasional stooping, crouching, and climbing stairs and no more than frequent balancing. Tr. 23. The ALJ also restricted Plaintiff to sedentary work which requires no more than two hours of standing and/or walking and accommodated Plaintiff's allegations about his need to use a cane to assist with walking and balance. Tr. 23; see 20 C.F.R. § 404.1567(a); SSR 83-10, 1983 WL 31251, at *5.

In September 2015, state agency consultant internist Dr. Rafael Queipo ("Dr. Queipo") reviewed the record and opined that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. Tr. 614-16. Dr. Queipo also opined that Plaintiff could stand and/or walk for 6 hours in an 8-hour workday and sit for 6 hours on a sustained basis in an 8-hour workday. Tr. 614-15. Dr. Queipo found that Plaintiff could frequently climb ramps, balance, stoop, and kneel and only occasionally climb ladders, crouch, and crawl. Tr. 615. In December 2015, state agency consultant internist Dr. Ramón Ruiz Alonso ("Dr. Ruiz") reviewed the record upon reconsideration and concurred with Dr. Queipo's opinion. Tr. 634. The ALJ assigned little weight to the opinions of Dr. Queipo and Dr. Ruiz as the record evidence demonstrated that their opinions were not consistent with the diagnostic imaging studies and the

opinions of Dr. Vargas and Dr. Ríos which revealed greater limitations. Tr. 25. The ALJ properly evaluated the medical evidence and opinions of record in determining Plaintiff's physical RFC. Her physical RFC determination is supported by substantial evidence.

### B. The Development of the Administrative Record

Plaintiff argues that the ALJ should have taken additional steps to develop the administrative record. ECF No. 15, at 9-13. First, Plaintiff argues that the ALJ should have issued subpoenas to Ms. Wilmili Cardona Rosado ("Ms. Cardona") and Ms. Larissa Díaz ("Ms. Díaz") whom he characterizes as vocational consultants.[6] Id. at 10. Contrary to Plaintiff's assertions, Ms. Cardona and Ms. Díaz are not vocational consultants but rather disability examiners. In September 2015, Ms. Cardona determined that Plaintiff was not disabled at the initial disability determination stage. Tr. 620. In December 2015, Ms. Díaz determined on reconsideration that the record evidence supported Ms. Cardona's initial determination that Plaintiff was not disabled. Tr. 638. In February 2016, Plaintiff filed a request to subpoena Ms. Díaz and Ms. Cardona so that he could cross-examine them "on the contents of such [vocational] assessment, the criteria utilized to reach to the reported conclusions and the professional qualifications of the consultants[s]. . . " Tr. 874-75.

"[A]n applicant for social security does not have an absolute right to cross-examine witnesses who present reports contrary to Plaintiff's interests." López v. Chater, 8 F. Supp. 2d 152, 156 (D.P.R. 1998); Feliciano v. Chater, 901 F. Supp. 50, 52 (D.P.R. 1995) (explaining there is no "*per se* rule that disability claimants are in all cases entitled to subpoena for the purpose of cross-examining non-testifying experts in disability determination hearings before an ALJ."). The Social Security regulations provide that "[w]hen it is reasonably necessary for the full

---

[6] It is undisputed by the parties that Plaintiff's request to subpoena Ms. Díaz and Ms. Cardona was not granted by the ALJ. ECF No. 15, at 10; ECF No. 18, at 21, 22.

presentation of a case, an administrative law judge . . . may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing." 20 C.F.R. § 416.1450(d)(1); 20 C.F.R. § 404.950(d)(1).

A party that wishes to subpoena documents or witnesses must file a written request which gives "the names of the witnesses or documents to be produced; describe the address or location of the witnesses or documents with sufficient detail to find them; state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena." 20 C.F.R. § 416.1450(d)(2); 20 C.F.R. § 404.950(d)(2). "Claimants have no absolute right to subpoena witnesses for testimony at the administrative hearing and reviewing Courts analyze such decisions by applying an abuse of discretion standard." Ford v. Comm'r of Soc. Sec., 143 F. Supp. 3d 714, 720 (S.D. Ohio 2015); Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020) ("[a]n ALJ's denial of a subpoena is reviewed for abuse of discretion.").

Plaintiff argues that the ALJ erred by not issuing subpoenas to Ms. Cardona and Ms. Díaz because they did not interview him, explain their rationale, and utilized "criteria of dubious validity which does not constitute substantial evidence to support a decision." ECF No. 15, at 10. Plaintiff's argument is not viable because the ALJ did not rely upon the opinions of Ms. Cardona and Ms. Díaz in her decision and their findings are "inherently neither valuable nor persuasive." See 20 C.F.R. § 404.1520b ("[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate issue about whether you are disabled" are "inherently neither valuable nor persuasive."). Instead, the ALJ properly solicited testimony from the vocational expert ("VE"), Ms. Susan Albert, at the administrative hearing. Tr. 37, 51-60. The ALJ presented the claimant's RFC limitations, work

16

experience, education, and age to the VE. Tr. 56. The VE testified that a hypothetical individual with a similar RFC could not perform Plaintiff's past work as a tractor trailer truck driver and warehouse worker. Tr. 56. The VE, however, proceeded to testify that a hypothetical individual with a similar RFC would be able to perform the following representative occupations: order clerk, ticket checker, and addresser. Tr. 57.

Plaintiff also argues that the ALJ erred by not granting his February 2016 request to subpoena Dr. Ruiz, Dr. Nieves, Dr. Queipo, and Dr. Hernández.[7] ECF No. 15, at 10-11; Tr. 878. Plaintiff specifically argues that he should have been given the opportunity "to confront and cross-examine [the] consultants during the hearing with regards to their assessments and the criteria relied upon to reach their conclusions; also to go over their qualifications." ECF No. 15 at 11. Plaintiff's request to subpoena Dr. Ruiz, Dr. Nieves, Dr. Queipo, and Dr. Hernández did not comply with the requirement that he articulate the important facts that the witnesses were expected to prove. See 20 C.F.R. § 416.1450(d)(2); Feliciano, 901 F. Supp. at 56 (finding that the ALJ did not abuse his discretion in denying a claimant's subpoena requests where she failed to state the important facts that the witnesses were expected to prove).

Furthermore, at the hearing, Plaintiff did not renew his subpoena request or argue that the cross examination of the state agency consultants was reasonably necessary for the full presentation of his case. See Luukkonen v. Comm'r of Soc. Sec., Civ. No. 13-1115, 2015 WL 1119747, at *2 (W.D. Mich. Mar. 11, 2015) (finding that the ALJ did not abuse his discretion in denying a claimant's subpoena request "[w]hen the ALJ gave her an opportunity to present her case at her hearing, [claimant] did not insist that a subpoena was necessary for the full presentation of her case by renewing her request for a subpoena, by objecting to the lack of

---

[7] It is undisputed by the parties that the ALJ did not grant Plaintiff's subpoena request. ECF No. 15, at 11; ECF No. 18, at 22.

ruling on her initial request for a subpoena, by requesting cross-examination of Dr. Geiger, or by presenting the interrogatories.").

Plaintiff also alleges that the ALJ erred by not granting his February 2016 request to submit interrogatories to Dr. Barbosa and Dr. Ríos.[8] ECF No. 15, at 10-11; Tr. 862-68, 869-77. "[T]hough the Social Security Administration's Hearing, Litigation, and Appeals Manual ('HALLEX') states that the preferred method for obtaining the opinion of a medical expert is through live testimony, it also states that the ALJ may obtain such testimony through medical interrogatories." Martz v. Comm'r, Soc. Sec. Admin., 649 Fed. Appx. 948, 962-63 (11th Cir. 2016). HALLEX provides that an ALJ may solicit medical evidence testimony through written interrogatories and "may obtain interrogatories at the request of the claimant or representative, or on his or her own initiative." HALLEX I-2-5-42. However, "[t]he decision to submit interrogatories generally falls within the discretion of the ALJ." Leiber v. Comm'r of Soc. Sec. Admin., Civ. No. 19-156, 2020 WL 3467401, at *4 (S.D. Ohio June 25, 2020); Harriman v. Comm'r of Soc. Sec., Civ. No. 16-514, 2017 WL 4250072, *5 (S.D. Ohio Sept. 26, 2017).

Plaintiff alleged in his subpoena request that the interrogatories were necessary to secure the medical opinions of Dr. Barbosa and Dr. Ríos regarding his RFC as required by 20 C.F.R. § 404.1519n(c)(6). Tr. 862, 869. Plaintiff's assertion is unfounded as 20 C.F.R. § 404.1519n(c)(6) does not mandate that a state agency consultant assess a claimant's RFC.[9] Plaintiff also contends that the interrogatories to Dr. Barbosa were necessary to find out the basis of her opinion. ECF No. 15, at 11-12. Plaintiff's argument is not viable as Dr. Barbosa's

---

[8] It is undisputed between the parties that the ALJ did not grant Plaintiff's request to submit the interrogatories at issue. ECF No. 15, at 11-12; ECF No. 18, at 22.

[9] 20 C.F.R. § 404.1519n(c)(6) provides that "Although we will ordinarily request a medical opinion as part of the consultative examination process, the absence of a medical opinion in a consultative examination report will not make the report incomplete."

psychological report was based on a clinical interview, clinical observations, and mental status examinations. Tr. 925-33. Thus, the ALJ did not abuse her discretion in declining to subpoena and submit interrogatories to the state agency consultants in this case. See López, 8 F. Supp. at 156-57.

### C. The ALJ's Step Five Determination

Lastly, Plaintiff contends that the ALJ's determination at step five of the sequential process is not supported by substantial evidence. ECF No. 15, at 13-16. At step five, the ALJ evaluates whether a claimant's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). An ALJ may "credit the vocational expert's testimony as long as there [is] substantial evidence in the record to support the description of claimant's impairments given in the ALJ's hypothetical to the vocational expert." See Berrios-López v. Sec'y of Health and Human Servs., 951 F.2d 427, 429 (1st Cir. 1991). In the case at hand, the ALJ's hypothetical to the VE at the hearing mirrored the ALJ's RFC determination. Tr. 23, 56-58. The VE testified that a hypothetical individual with the same RFC limitations as Plaintiff could perform the jobs of order clerk, ticket checker, and addresser. Tr. 57. The ALJ then asked if the hypothetical individual could still perform these jobs if he required a cane for supportive balancing while walking. Tr. 57-58. The VE responded that the hypothetical individual could still perform the order clerk, ticket checker, and addresser jobs with this additional limitation. Tr. 58.

Plaintiff argues that the hypothetical question posed by the ALJ to the VE did not accurately depict all of his RFC limitations. Plaintiff argues that the hypothetical should have included limitations that he would need to be off task more than 10% of the day, that he cannot maintain balance, he cannot climb more than 10 steps at a time, and cannot walk more than 100

meters at a time without resting. ECF No. 15, at 14-16. As stated earlier, substantial evidence supports the ALJ's RFC determination and Plaintiff cannot rehash his RFC argument at this final step. See Gallant v. Berryhill, Civ. No. 16-308, 2017 WL 2731303, at *7 (D. Me. June 25, 2017). The ALJ was entitled to rely on the opinion of the VE at step five of the sequential process and her determination that there was work in the national economy that Plaintiff could perform is supported by substantial evidence. See Berríos-López, 951 F.2d at 429.

**IV.     Conclusion**

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 19th day of March, 2021.

s/Marcos E. López
U.S. Magistrate Judge